UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SYNY LOGISTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-764 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| GREAT LAKES INSURANCE SE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

SYNY Logistics, Inc., a large interstate trucking company, bought an insurance policy from Great Lakes Insurance SE. The policy covered drivers as they hauled freight across the country. But the policy did not cover anyone and everyone who got in the cab and got behind the wheel. The policy required drivers to have one year of driving experience.

One day, Brent Granville, a driver for the company, hopped into his big rig with a set of keys. He started the engine and went trucking with 354 days of experience under his belt. That's close to a year of experience, but it's not a year. Unfortunately, he crashed.

The accident sparked a dispute between the trucking company and the insurance company. SYNY later filed this declaratory judgment action, seeking coverage for the accident. Great Lakes, in turn, filed a counterclaim about the lack of coverage. The insurance company then moved for summary judgment, arguing that there is no coverage because the driver did not have the experience required by the policy.

The Court grants Great Lakes's motion. When it comes to coverage, the policy is not in for a penny, in for a pound. It's miss by an inch, miss by a mile. Granville got 97% of the way toward satisfying the one-year requirement. So, he's 100% short and is entitled to 0% coverage.

**Background**

SYNY Logistics, Inc. calls itself the "greatest logistic[s] company" in America. *See Our Services*, SYNY Logistics Inc., https://synylogistics.com/our-services/ (last accessed Sept. 26, 2023). It boasts more than 1,000 trucks in 120 cities. *Id.*

Brent Granville drove one of those trucks, a 2016 White Western Star, Model 5700 XE.[1] *See* Cplt., at ¶ 9 (Dckt. No. 1-1); *see also* Pl's. Obj. to Def.'s Rule 56 Statement, at 2, ¶¶ 1–2 (Dckt. No. 38). After nine months on the job, he had a bad day at work. *Id.* at 2, 7, ¶¶ 2, 17. On January 26, 2021, Granville got into his truck, and got in an accident. *Id.* at 7, ¶ 17.

The Court does not know details about what happened, where it happened, or how it happened. But the accident left the truck in bad shape. A towing company dragged the truck away. The repair and towing costs exceeded $68,000. Fortunately, there is nothing in the complaint suggesting that Granville suffered a personal injury.

SYNY filed a claim with its automobile insurance company, Great Lakes Insurance SE. *Id.* at 7, ¶ 18. Great Lakes wanted experienced hands on the wheel. The policy expressly required drivers to have a certain level of driving experience.

Basically, drivers needed to "have" at least one year of driving experience. That experience needed to be recent, too. The driving experience needed to take place within two years. Specifically, the policy provided as follows:

> [T]his Insurance shall not indemnify [SYNY] for loss or damage to any Automobile . . . unless the Automobile is operated by . . . a driver who at inception of this Policy or at the date of hire, whichever is the later, provides documented evidence of an MRV no older than three months showing that they:
> . . .

---

[1] The 5700 XE has silver screen experience. Optimus Prime disguised himself as a 5700 in *Transformers: Age of Extinction* (2014). *See Bryan Alexander & Chris Woodyard*, *Big, Mean 'Transformers' Truck Goes Green, Lean*, USA Today (June 28, 2014), https://www.usatoday.com/story/money/cars/2014/06/28/transformers-truck/11647799/ (last accessed Sept. 28, 2023).

    2) Have experience as follows:

        a) a minimum of two (2) years continuous driving experience, within thirty-six (36) months of the policy inception date or date of hire, whichever is the later, driving equipment similar to or driving trucks transporting cargo similar to that insured under this Policy; OR

        b) a minimum of (1) years continuous driving experience, within twenty-four (24) months of the policy inception date or date of hire, whichever is the later, driving equipment similar to or driving trucks transporting cargo similar to that insured under this Policy providing there are no violations and no at fault accidents.

*See* Certificate of Insurance, Ex. A to Counterclaim (Dckt. No. 9-1, at 29 of 34) (emphasis omitted).

The second option (option b) is relevant here. *See* SYNY's Resp., at 4–5 (Dckt. No. 37). The key dates are when Granville began driving, when the company hired him, and when the policy began.

Granville got his commercial license on September 5, 2019. *See* Pl.'s Obj. to Def.'s Rule 56 Statement, at 8, ¶ 4. (Dckt. No. 38). SYNY hired him on April 19, 2020. *Id.* at 2, ¶ 2. The policy started on August 24, 2020. *Id.* at 2, ¶ 3. He got into the accident on January 26, 2021. *Id.* at 2 ¶ 9. In other words, Granville got his license, and then he was hired, and then the policy started. And then he crashed.

Great Lakes denied the claim. *Id.* at 7, ¶ 19. Great Lakes believes that the policy does not cover Granville because he did not have one year of continuous experience on the policy's start date. *Id.* at 3–4, ¶¶ 5–7.

SYNY disagrees. It thinks the policy covers Granville because he could earn his one-year experience milestone "within" 24 months of the policy's start date. *See* SYNY's Resp., at 5 (Dckt. No. 37). In other words, as the company sees it, the clock started ticking when

Granville got his license on September 5, 2019, and he would hit the one-year mark "within" 24 months of August 24, 2020 (the policy's start date). *See id.*

SYNY sued Great Lakes in the Circuit Court of Cook County. *See* Cplt. (Dckt. No. 1-1). It brought three counts. First, SYNY asked for a declaratory judgment that the policy covers Granville's accident. *Id.* at ¶¶ 14–16. Next, it claimed that Great Lakes breached the policy by denying coverage. *Id.* at ¶¶ 17–21. Finally, SYNY claimed that Great Lakes violated section 155 of Illinois's insurance code by denying SYNY's claim vexatiously. *Id.* at ¶¶ 22–24.

Great Lakes – a *societas europaea* (more on that in a minute) – removed the case. *See* Notice of Removal (Dckt. No. 1). It also filed a counterclaim for a declaratory judgment that the policy does not cover SYNY's claim. *See* Counterclaim, at 10 (Dckt. No. 9). Then Great Lakes moved for summary judgment. (Dckt. No. 33).

**Legal Standard**

Great Lakes is entitled to summary judgment if it shows that there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." *See Jaranowski v. Ind. Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023) (citation omitted). To decide the motion, this Court views the evidence and draws all reasonable inferences in SYNY's favor as the non-moving party. *Id.*

**Analysis**

This Court starts with the first step in every case: establishing jurisdiction. The Court must button down jurisdiction even if the parties do not raise it. *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) ("[Jurisdiction is a] question the court is bound to ask and answer for itself, even when not otherwise suggested[.]").

4

I.      **Jurisdiction**

Federal courts hear cases from a limited menu. "They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Diversity cases are on the menu. District courts have jurisdiction over civil actions when the amount in controversy exceeds $75,000 and the suit is between "citizens of a State" and "citizens or subjects of a foreign state."[2] *See* 28 U.S.C. § 1332(a)(2).

The diversity statute requires complete diversity. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021). A plaintiff and defendant cannot share citizenship of the same state. *Id.* So, this Court must determine the citizenship of SYNY and Great Lakes.

SYNY's citizenship is straightforward. SYNY is a corporation. *See* Cplt., at ¶ 1 (Dckt. No. 1-1). A corporation is a citizen of its state of incorporation and its principal place of business. *See West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 830 (7th Cir. 2020). SYNY is incorporated in Illinois, and its principal place of business is in Illinois. *See* Cplt., at ¶ 1. So, SYNY is an Illinois citizen.

Great Lakes's citizenship is more complicated. Despite the Midwestern-sounding name, Great Lakes is from mid-continental Europe. Great Lakes is a foreign entity – the "SE" on the end of its name stands for *societas europaea*. *See* Notice of Removal, at ¶ 9 (Dckt. No. 1). To determine a foreign business's citizenship, Seventh Circuit courts decide "what U.S.-recognized

---

[2] The amount in controversy requirement is satisfied. "The estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible." *Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011) (cleaned up). Great Lakes – the federal jurisdiction proponent – said SYNY seeks about $67,000 for vehicle damages and towing costs plus $60,000 in statutory damages for the section 155 claim. *See* Notice of Removal, at ¶ 15 (Dckt. No. 1); *see also Jump v. Schaeffer & Assocs. Ins. Brokerage, Inc.*, 123 F. App'x 717, 720 (7th Cir. 2005) (adding section 155 damages to an amount in controversy calculation). That's $127,000 in total – well over the $75,000 threshold.

entity the foreign entity most resembles." *See* 15A James W. Moore *et al.*, Moore's Federal Practice § 102.75 (3d ed. 2023); *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014).

At that point, courts analyze the entity under the citizenship rules that apply to its American twin. *See, e.g.*, *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 789–90 (7th Cir. 2014) ("Having held . . . that an American LLC has the citizenship of every member-investor, we are not about to establish a different rule for functionally identical entities established under other nations' laws."); *BouMatic*, 759 F.3d at 791 (holding that a Netherlands entity resembled a U.S. close corporation and treating it as such).

Sometimes figuring out the citizenship of an entity from the other side of an ocean is "difficult." *See Fellowes*, 759 F.3d at 788. It can be hard to figure out if a pear is more like an apple or an orange. But the Seventh Circuit has laid down guideposts.

A foreign entity is the functional equivalent of an American corporation when it has "perpetual existence," is governed by a Board of Directors, issues tradable shares, and is treated "independent of its equity investors." *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see also Superl Sequoia Ltd. v. Carlson Co., Inc.*, 615 F.3d 831, 832 (7th Cir. 2010) (citation omitted).

This Court knows of only one case directly deciding whether a *societas europaea* is a corporation for diversity purposes.[3] *See SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Ins. Ltd.*, 2021 WL 2550505, at *8 (D. Md. 2021). That court – although writing from Maryland – applied the Seventh Circuit's framework. *Id.* ("[T]he Court will apply the Seventh and Eighth

---

[3] A Westlaw search for district court references to "*societas europaea*" returned a whopping ten results. A search for Courts of Appeal references revealed just one. *See Pioneer Trail Wind Farm, LLC v. FERC*, 798 F.3d 603, 605 (7th Cir. 2015).

Circuits' comparison test to decide whether Starstone Insurance SE is equivalent to a U.S. corporation for the purposes of diversity jurisdiction."). It held that SEs are comparable to U.S. corporations for diversity purposes. *Id.* at \*9.

This Court sees no reason to land somewhere else. Like American corporations, SEs have "transferable shares, limited liability, and a legal personality independent from its shareholders." *Id.* at \*8; *see also* Council Regulation 2157/2001 (EC), preamble, ¶ 13 ("The SE itself must take the form of a company with share capital[.]"); *id.* art. 1, ¶ 2 ("The capital of an SE shall be divided into shares. No shareholder shall be liable for more than the amount he has subscribed."); *id.* art. 1, ¶ 3 ("An SE shall have legal personality."); *id.* art. 38 ("[A]n SE shall compromise: . . . a general meeting of shareholders and . . . either a supervisory organ and a management organ . . . or an administrative organ[.]"); *Setting up a European Company (SE)*, Eur. Union, https://europa.eu/youreurope/business/running-business/developing-business/setting-up-european-company/index_en.htm (last accessed Sept. 26, 2023) ("The European Company – also known as SE (Societas Europ[a]ea in Latin) – is a type of public limited-liability company[.]"[4]).

Those features are American corporation hallmarks. *See Lear*, 353 F.3d at 583. So a *societas europaea* is a corporation for diversity purposes.[5]

In turn, the Court must determine Great Lakes's place of incorporation and principal place of business. *See West*, 951 F.3d at 830. Great Lakes is registered in Germany and its

---

[4] That phrasing gave the Court a little pause. When it comes to jurisdiction, the citizenship of a limited liability company is not the same as the citizenship of a corporation. An LLC is a citizen where its members are citizens, but a corporation is a citizen where it is incorporated and where it has its principal place of business. *See Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003); *Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485 (7th Cir. 2016); *Thomas v. Guardmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Even so, this Court has found no indication that an SE is comparable to a limited liability company under American law.
[5] In the tax world, the IRS treats SEs as corporations. *See* 26 C.F.R. § 301.7701-2(b)(8).

principal place of business is in Munich. *See* Notice of Removal, at ¶ 9 (Dckt. No. 1). So, Great Lakes is diverse from SYNY (an Illinois citizen). This Court has jurisdiction.

## II. The Merits

With jurisdiction in hand, the Court turns to the merits. The key question is whether SYNY satisfied the requirement that the driver must "have" one year of driving experience. The punchline is that Granville had 354 days of experience, so he never got there.

### A. The Scope of Coverage

The motion for summary judgment turns on the meaning of the policy. The first step involves pinning down choice of law. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 872 (7th Cir. 2000).

The decision is simple. The parties agree that Illinois law applies. *See* Def.'s Mem., at 4 (Dckt. No. 34) (citing Illinois cases); Pl.'s Resp., at 6 (Dckt. No. 37) (same). So, Illinois law it is. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("We honor reasonable choice-of-law stipulations in contract cases[.]").

Traditional rules of contract interpretation apply to insurance policies. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). The Court must "give effect to the intention of the parties, as expressed in the policy language." *Id.*

The text of the policy defines the scope of coverage, and courts must uphold the plain meaning of the text. "If the language is unambiguous, the provision will be applied as written, unless it contravenes public policy." *Id.* at 1003–04. But a policy provision is not "ambiguous simply because the parties disagree." *Id.* at 1004. An ambiguity only exists if language "is susceptible to more than one reasonable interpretation." *Id.*

8

The endorsement declared that Great Lakes would not indemnify SYNY for damage unless an "experience[d]" driver operated the vehicle. *See* Certificate of Insurance, Ex. A to Counterclaim (Dckt. No. 9-1, at 29 of 34) (emphasis omitted). The driver must "have" a certain level of experience. *Id.* Specifically, the driver must provide "documented evidence" showing that he "ha[s]" the necessary experience "at the inception of th[e] Policy or at the date of hire, whichever is the later." *Id.*

The parties agree on the relevant dates. SYNY hired Granville on April 19, 2020. *See* Pl's. Obj. to Def.'s Rule 56 Statement, at 2, ¶ 2 (Dckt. No. 38). The policy started on August 24, 2020. *Id.* at 2, ¶ 3. August 2020 came after April 2020. The policy start date is the later date.

So the question is whether Granville had "a minimum of one (1) years continuous driving experience, within twenty-four (24) months of" August 24, 2020. *See* Certificate of Insurance, Ex. A to Counterclaim (Dckt. No. 9-1, at 29 of 34) (emphasis omitted).

Granville did not. Granville received his commercial license on September 5, 2019. *See* Pl's. Obj. to Def.'s Rule 56 Statement, at 8, ¶ 4 (Dckt. No. 38). The policy started 354 days later. *Id.* at 2, ¶ 2. He was only nine days away from hitting the 365-day mark. He got 354 feet toward the 365-foot finish line.

That's close, but no cigar. Granville fell short of notching one year of driving experience under his belt. So the policy did not cover Granville. For want of 9 days, the coverage was lost.

The experience requirement makes sense. After all, Great Lakes was insuring heavy equipment that could cause a lot of damage to a lot of people. So, before signing up for that potential liability, Great Lakes wanted to make sure that the people doing the driving knew what they were doing.

9

SYNY pushes back. It argues that the policy covers Granville because he obtained his license "within" the 24-month window. *See* Pl.'s Resp., at 5 (Dckt. No. 37). In other words, SYNY thinks that the policy's reference to "within" means that Granville had a four-year span to clock one year of experience: "between August 24, 2018 and August 24, 2022." *Id.* Put another way, SYNY does not think the policy requires drivers to have one year of experience *before* the policy starts. *See id.* at 6–7 ("If Great Lakes required the driver to have a year of experience prior to the inception date or the driver's date of hire, it should have used the word "prior" and not the word "within[.]").

SYNY's argument falls short. It severs "within" from the sentence and yanks it from its context. But a word "in isolation" does not decide a provision's meaning. *See Italia Foods, Inc. v. Sun Tours, Inc.*, 986 N.E.2d 55, 59 (Ill. 2011) (citation omitted). It is a "fundamental principle" of "language itself" that a word's meaning is drawn from "context." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric. Implement Workers of Am.*, 523 U.S. 653, 657 (1998) (Scalia, J.) (citation omitted).

The Court must read "within" alongside the policy's other words, within its broader linguistic neighborhood. On the policy's start – August 24, 2020 – Granville needed to "[h]ave" one year of continuous driving experience "within" 24 months of August 24, 2020. *See* Certificate of Insurance, Ex. A to Counterclaim (Dckt. No. 9-1, at 29 of 34) (emphasis omitted).

"Have" is the present tense. It is not "will have." It's "have." The moment the clock struck midnight on August 24, 2020, Granville needed to "have" the experience. He didn't.

Viewed in isolation, the word "within" could look forward or backward. For example, imagine if someone asked you on Sunday if you ate a pizza "within" two days of Wednesday. If

you ate Giordano's pizza on Monday, the answer would be "Yes." If you ate a Lou Malnati's pizza on Friday, the answer would be "Yes."

But surrounding text can provide interpretive clues about the meaning of words. Here, the question is not whether a driver will have driving experience within two years. The question is whether the driver *has* driving experience. The drivers must "have" driving experience when they drive, or else there is no coverage.

A driver does not "have" one year of driving experience "within twenty-four (24) months" if the driver *has no* driving experience. In effect, the phrase "within twenty-four (24) months" means within the *past* 24 months.

The requirement of documentation sheds light on the meaning, too. The driver must "provide[] documented evidence of an MRV no older than three months showing" the requisite experience, and must do so "at inception of this Policy or at the date of hire, whichever is the later." It is hard to see how a driver could provide documentation that they "have" experience when the experience is *future* experience.

A contrary reading is hard to square with the text of the policy. And from a practical standpoint, it makes little sense. Under SYNY's reading, the policy would cover a driver – even if that driver had *no experience at all* – as long as the driver gets one year of experience within 24 months. If "within" applied to *future* experience, the policy would cover drivers who lack experience when they get behind the wheel.

Insurance companies need to know what they're getting. When it comes to the risks of getting behind the wheel, not all drivers are created equal. Some drivers pose greater risks than others. All else being equal, inexperienced drivers pose greater risks than experienced drivers. And the greater risks from inexperienced drivers mean that insurance coverage costs more. (As

11

an exercise, wait for your teenager to get his or her license, and then open the bill from your insurance company.)

Great Lakes insured SYNY and priced it based on the assumption that drivers would have at least one year of experience. Insuring a fleet of experienced drivers posed a smaller risk of loss to Great Lakes than insuring a fleet of inexperienced drivers. And on the flipside, SYNY paid premiums based on the assumption that its drivers would have at least a year of experience. SYNY cannot expect to pay for a policy at a price for experienced drivers, and then hand the keys to an inexperienced driver and expect coverage.

Pivoting, SYNY argues that this Court must adopt its interpretation because the language is ambiguous and SYNY's interpretation is "reasonable." *See* Pl.'s Resp., at 6–7 (Dckt. No. 37). True, courts construe insurance policies in the face of ambiguity "liberally in favor of coverage" when there is "more than one reasonable interpretation." *See Founders*, 930 N.E.2d at 1004. But there is no ambiguity here. And even if one existed, SYNY's ask is unreasonable.

It is unreasonable to read the requirement of experience to cover *future* experience. By way of analogy, imagine if a French restaurant advertised that it is looking to hire a sous-chef. The job posting requires one year of experience within two years. No one would think that they can show up for the interview with zero culinary experience. And if they did, it would be a short interview.

SYNY makes one last stand.[6] It concludes its brief with a paragraph that looks like it belongs in a fact section. *See* Pl.'s Resp., at 7 (Dckt. No. 37). There is not a legal argument in sight. *Id.*

---

[6] SYNY also argues that Great Lakes's motion for summary judgment should be denied because Great Lakes improperly cites the Great Lakes general counsel's declaration. *See* Plf.'s Resp., at 2–4 (Dckt. No. 37). The Court does not need to address the argument because the Court does not rely on the declaration.

SYNY states that "prior to the issuance of the Policy," and during the application process, SYNY Logistics provided Great Lakes with a list of drivers. *Id.* The list included Granville. *Id.* But Great Lakes never "informed" SYNY that Granville was not qualified. *Id.* Instead, Great Lakes "invoiced" SYNY for premiums. *Id.*

Maybe SYNY is hinting at a waiver or estoppel argument. Great Lakes anticipated the argument in its opening brief. *See* Def.'s Mem., at 5–6 (Dckt. No. 34).

But facts dumped into a brief do not make a legal argument. An estoppel or waiver argument should – at the very least – use the words "estoppel" or "waiver." SYNY's brief has none. *See* Pl.'s Resp., at 6–7 (Dckt. No. 37).

This Court will not build the argument for the parties. SYNY has waived its waiver and estoppel arguments. *See Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."); *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[A]rguments that are unsupported by pertinent authority[] are waived.").

A factual dispute does not exist. Great Lakes is entitled to judgment as a matter of law. The policy did not cover Granville's accident because he did not satisfy the coverage requirements.

B.  **The Remaining Claims**

The remaining claims crumble, for the same reasons.

Consider the breach of contract claim first. For SYNY's claim to survive, a jury must be able to find (1) the existence of a valid contract; (2) performance by SYNY; (3) breach of contract by Great Lakes; and (4) resulting injury to SYNY. *See Henderson-Smith & Assocs., Inc. v. Nahamani Family Servs. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. 2001). SYNY's theory is that

Great Lakes "breached the contract by denying coverage." *See* Cplt., at ¶¶ 17–21 (Dckt. No. 1-1).

But a jury could not find a breach. The policy did not cover the accident. So, Great Lakes did not breach the contract by denying the claim.

SYNY's section 155 claim fails, too. Illinois's insurance code declares that in a case where an insurance company's claim-denial is at issue, "and it appears to the court that" the insurance company's position is "vexatious and unreasonable," the court can award, among other things, $60,000. *See* 215 Ill. Comp. Stat. 5/155(1)(b). But for a plaintiff to recover, it must "succeed in the action on the policy." *Hoover v. Cty. Mut. Ins. Co.*, 975 N.E.2d 638, 647 (Ill. App. Ct. 2012). SYNY lost the policy action. It cannot win here.

## Conclusion

The Court grants Great Lakes's motion for summary judgment on all of SYNY's claims. Great Lakes also filed a counterclaim for a declaratory judgment that "Great Lakes owes no insurance coverage" in connection with the accident. *See* Counterclaim, at 10 (Dckt. No. 9). It is the same issue raised in the complaint. The counterclaim is the mirror image of the complaint, pointed in the other direction. The Court *sua sponte* grants summary judgment in favor of Great Lakes on its counterclaim.

Date: September 30, 2023

Steven C. Seeger
United States District Judge

14